UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-CV-63140-STRAUSS

**GARY MAZZAFERRO,**

    Plaintiff,

v.

**ANDREW SAUL,
Commissioner of Social Security,**

    Defendant.

_____/

## ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

THIS MATTER came before the Court upon Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion") [DE 14] and Defendant's Motion for Summary Judgment ("Defendant's Motion") [DE 19]. The Court has reviewed the Motions, all summary judgment materials, and the record in this case. For the reasons discussed herein, Plaintiff's Motion [DE 14] will be **DENIED** and Defendant's Motion [DE 19] will be **GRANTED**.

## BACKGROUND

### I. PROCEDURAL HISTORY

Plaintiff applied for Disability Insurance Benefits on March 10, 2017, alleging disability as of December 12, 2015 ("Alleged Onset Date"). Tr. 15. The application was denied initially and upon reconsideration. Tr. 96-106. Thereafter, Plaintiff appeared with counsel at a hearing before an Administrative Law Judge ("ALJ") on January 14, 2019; Ms. Chapman, a vocational expert ("VE"), and Dr. Greenberg, a medical expert ("ME"),[1] also appeared and testified. Tr. 30-

---

[1] The ALJ's decision incorrectly refers to the ME as Dr. Krishnamurthi. Nevertheless, it is clear that the ALJ's decision is discussing Dr. Greenberg's testimony, and that the ALJ's decision merely contains a scrivener's error. The parties do not argue otherwise.

50. On March 6, 2019, the ALJ issued his decision, finding that Plaintiff was not "disabled" under the Social Security Act (from the Alleged Onset Date through the date of the ALJ's decision). Tr. 15-22. On October 31, 2019, the Appeals Council of the Social Security Administration denied Plaintiff's request for review, thereby leaving the ALJ's decision as the final decision of the Commissioner. Tr. 1-5. Consequently, on December 23, 2019, Plaintiff filed this action seeking judicial review of the Commissioner's decision.

## II.   FACTS

### A. Plaintiff's Background

Plaintiff was fifty-three (53) years old on the Alleged Onset Date and was fifty-six (56) years old at the time of the hearing before the ALJ (and on the date that the ALJ issued his decision). *See* Tr. 20. Plaintiff has at least a high school education and can communicate in English. Tr. 20. The VE testified that Plaintiff performed past relevant work as a vice president of a financial institution. Tr. 20, 45.

### B. Medical Evidence

In 2012, Plaintiff underwent surgery to remove a meningioma in the occipital region of the brain. Tr. 277. The majority of the tumor was resected. Tr. 277. However, following a March 2014 examination at the Kendall Eye Institute, Dr. Hamburger reviewed Plaintiff's MRI scan and observed the presence of what could represent scarring or residual tumor. In addition, Dr. Hamburger stated that:

> Computerized fields showed complete loss of the inferior temporal portion of the left visual field due to the surgery and tumor. The right visual field was normal. I compared the field loss in the left eye from testing by Dr. Woods in May and September 2013, and there was definitely more loss in the left eye today. There was some mild left inferior loss in the right eye field done by Dr. Woods, that has returned to normal when tested today.

Tr. 278.

2

Plaintiff also attended an appointment with Dr. Hamburger in November 2014. Dr. Hamburger's notes and comments regarding that appointment were substantially similar; though, he also noted that review of a new MRI did not show any significant tumor regrowth. Tr. 281. Various examinations prior to and following the aforementioned appointments revealed visual acuities of 20/20 and 20/25. Tr. 284-92. The medical evidence is discussed at length in the ALJ's decision.[2] Tr. 18-20. In addition to the non-testimonial medical evidence, the ALJ also considered live testimony from the ME, which is discussed in the next section.

**C. Hearing Testimony**

**1. ME's Testimony (Tr. 31-40)**

The ME who testified (Dr. Greenberg) is an ophthalmologist. Tr. 32. He testified that Plaintiff's diagnosis "is bilateral homonymous hemianopsia meaning there is a loss of visual field in each eye on the same side in this case, the left side, lower left side . . . [d]ue to meningioma of the right occipital lobe of the brain, which was resected." Tr. 32. The ALJ asked the ME to discuss the practical limitations Plaintiff may have (such as limitations related to reading, writing, and driving). Tr. 33. The ME testified "there might be a problem driving." Tr. 33. He explained that Plaintiff would not have any problem driving straight ahead, but that he may have a problem when a vehicle comes from the left. Tr. 33. Nevertheless, the ME did not believe the issue to be severe enough that it would prevent Plaintiff from obtaining a license. Tr. 33.

As to reading, the ME testified that Plaintiff is able to read when looking directly at text because Plaintiff's vision corrects to 20/20 or 20/25. Tr. 33. Plaintiff can even see small font and text. Tr. 33. However, the ME testified that Plaintiff's condition may limit his ability to scan,

---

[2] The Court notes that the non-testimonial medical evidence is not discussed at length in Plaintiff's Motion. Instead, the only medical evidence that Plaintiff's Motion focuses on is the testimony of the ME.

3

noting that after reading a line (in English), one moves his eyes back to the left because we read from left to right. Tr. 33-34. According to the ME, the issue does not negate Plaintiff's ability to read, but it does slow his reading down. Tr. 34. Ultimately, the ME opined that "reading could be done and computer work could be done with some slowing down time and some difficulty." Tr. 37. Also, notwithstanding the severity of Plaintiff's visual defect, the ME testified that the defect is less severe because it is on the left side (as opposed to the right side). Tr. 37-38. Thus, aside from some potential slowing down, the ME stated that he did not see a problem reading from left to right. Tr. 40.

In addition to the potential issues with driving and reading, the ME testified that Plaintiff should avoid doing a job that involves heights or moving or dangerous machinery. Tr. 34. Also, when asked about Plaintiff's alleged symptom of feeling a state of disequilibrium, the ME testified that the described symptom (which the ME did not precisely consider to be a loss of equilibrium as described) could potentially result "to a certain extent," and noted that the described symptom would cause a problem if doing the kind of work where there is an obstacle laden floor. Tr. 35-36, 38-39. Even though there would be no issue with seeing things straight ahead because Plaintiff's central vision is fine in both eyes, Plaintiff may have an issue seeing items 10 to 20 degrees away from central vision on the left. Tr. 36-37. Near the conclusion of the ME's testimony, the ALJ asked the VE whether she needed any clarification from the ME; the VE stated that she did not require any clarification. Tr. 38.

### 2. Plaintiff's Testimony (Tr. 41-44)

Plaintiff testified that in addition to his visual problems, he sometimes feels a sense of disorientation – akin to being lightheaded. Tr. 41-42. He also stated that he cannot scroll on a

computer screen because it makes him nauseous. Tr. 41. However, the majority of Plaintiff's testimony was centered around trying to explain his alleged disorientation. Tr. 41-43.

### 3. VE's Testimony (Tr. 45-49)

After testifying that Plaintiff has prior work experience as a vice president of a financial institution, the VE answered certain hypothetical questions posed by the ALJ. Tr. 45-47. First, the ALJ asked the VE whether an individual with Plaintiff's age, education, and vocational background, "who has the limitations set forth by [the ME]" – "specifically there's no gross physical limitations of any kind. It's only visual here . . . he may have difficulty driving and lowered ability to read. Okay. No heights, no machinery." – is able to perform Plaintiff's past relevant work. Tr. 45. The VE said such a question is difficult to answer. Tr. 45. However, when the ALJ asked the VE whether the same person with the same limitations can perform any other jobs in the national economy, the VE testified that such a person could complete work as a teller (which is less demanding than Plaintiff's past relevant work), as a cashier, or doing unskilled work (like laundry). Tr. 46.

The ALJ then specifically asked the VE, "assume that we have an individual same age, education, and vocational background who has limited ability to drive, limited ability to read, no heights, no dangerous machinery. Would such an individual be able to find work in the national economy and if so, what jobs would there be?" Tr. 47. The VE provided examples of unskilled work that such a person could perform, such as the job of sandwich maker (115,000 jobs), hand packager (53,400 jobs), and laundry worker (69,500 jobs). Tr. 47.[3] During cross-examination,

---

[3] The ALJ also posed another hypothetical regarding the same hypothetical individual, but adding one of Plaintiff's alleged complaints (related to allegedly needing to sit and do nothing several times a day). Tr. 47. While the VE said that a person with the limitation described by Plaintiff would not be able to find work in the national economy, Tr. 48, the ME did not testify to the

the VE testified that the first two jobs involve standing and that the laundry worker job may involve some limited moving around. Tr. 48. However, nothing from the VE's testimony showed that one with Plaintiff's limitations (as identified by the ME and the ALJ) would be unable to perform the three jobs identified by the VE. Nevertheless, the VE did state that "if a person has a consistent inability to be able to walk and does have you know a problem in walking and balancing, yes, that would be a problem in a job in which the person has to move around." Tr. 49.

## STANDARD OF REVIEW

In reviewing claims brought under the Social Security Act, a court's role is limited. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's findings of fact must be affirmed if they are based upon "substantial evidence." *See* 42 U.S.C. 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). "Substantial evidence is . . . such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore*, 405 F.3d at 1211 (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). It "is something 'more than a mere scintilla, but less than a preponderance.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citation omitted). "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Id.* (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). Courts "may not decide the facts anew, reweigh the evidence, or substitute [their] judgment for that of the [Commissioner]." *Id.* (quoting *Phillips*, 357 F.3d at 1240 n.8); *Bloodsworth*, 703 F.2d at 1239. In addition to determining whether the Commissioner's

---

foregoing limitation alleged by Plaintiff, and Plaintiff does not specifically claim that the ALJ erred by failing to include the foregoing alleged limitation in his RFC.

6

factual findings are supported by substantial evidence, courts must determine whether the ALJ applied the correct legal standards. *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## DISCUSSION

### I. THE SEQUENTIAL EVALUATION

A "disability" is defined as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In making a disability determination, "the ALJ must consider the evidence in its entirety, including: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant . . . and (4) the claimant's age, education, and work history." *Maffia v. Comm'r of Soc. Sec.*, 291 F. App'x 261, 262-63 (11th Cir. 2008) (quoting *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir.1972)). *See also Walden v. Schweiker*, 672 F.2d 835, 839 (11th Cir. 1982).

To arrive at a determination as to disability, the ALJ must undertake the sequential evaluation embodied in 20 C.F.R. § 404.1520. This process requires that the ALJ first determine whether the claimant is presently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If so, a finding of "no disability" is made.

If the claimant is not engaged in such work, then the ALJ must proceed to the second step and determine whether the claimant suffers from a "severe impairment." An impairment is severe if it significantly limits the claimant's physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If no severe impairment is found, then the ALJ will conclude that there

7

is no disability; if a severe impairment is found, then the ALJ will proceed to the next step of the analysis. *See id.*

The third step requires the ALJ to determine whether the claimant's impairment meets or equals those listed in Appendix 1 of the Regulations. 20 C.F.R. § 404.1520(d). If so, the ALJ will find the claimant disabled without considering age, education, and work experience. *Id.* If not, the inquiry will proceed to the next stage.

Step four requires the ALJ to determine whether the claimant has the residual functional capacity ("RFC") to perform past relevant work. 20 C.F.R. § 404.1520(e). The Regulations define RFC as "the most you can still do despite your limitations." 20 C.F.R. § 404.1545(a)(1). This determination takes into account "all of the relevant medical and other evidence," including the claimant's own testimony and the observations of others. 20 C.F.R. § 404.1545(a)(3). The ALJ must then compare the RFC with the physical and mental demands of the claimant's past relevant work to determine whether the claimant is still capable of performing that kind of work. If so, the claimant is found not disabled. 20 C.F.R. § 404.1520(f).

If the claimant establishes an inability to return to past relevant work, the inquiry turns to step five. "At step five the burden of going forward shifts to the [Commissioner] 'to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.'" *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)). If the Commissioner points to possible alternative employment, then the burden returns to the claimant to prove an inability to perform those jobs. *Id.* At this fifth and final step, the ALJ must resolve whether the claimant is actually capable of performing other work. *See* 20 C.F.R. §§ 404.1520(g), 404.1560(c).

To help evaluate whether sufficient jobs exist that can be performed given the claimant's age, education, and physical limitations, the Commissioner has promulgated Medical Vocational Guidelines. *See* 20 C.F.R. § 404, subpt. P, app. 2. The guidelines may apply "where a person is not doing substantial gainful activity and is prevented by a severe medically determinable impairment from doing vocationally relevant past work." 20 C.F.R. § 404.1569. The guidelines are composed of detailed grids and rules, which direct a finding of disabled or not disabled based on a claimant's RFC, age, education, and previous work experience. *Walker v. Bowen*, 826 F.2d 996, 1002 (11th Cir. 1987).

Yet, the guidelines "do not cover all possible variations of factors" and are inapplicable "if one of the findings of fact about the person's vocational factors and [RFC] is not the same as the corresponding criterion of a rule." 20 C.F.R. § 404.1569. Therefore, "[e]xclusive reliance on the grids is not appropriate *either* when [the] claimant is unable to perform a full range of work at a given residual functional level *or* when a claimant has non-exertional impairments that significantly limit basic work skills." *Phillips*, 357 F.3d at 1242 (citation omitted). *See also Walker*, 826 F.2d at 1002-03; *Hargis v. Sullivan*, 945 F.2d 1482, 1490 (10th Cir. 1991). Nevertheless, in such situations, the guidelines may serve as a framework to determine whether sufficient jobs exist within a claimant's range of RFC. *Hargis*, 945 F.2d at 1490. However, the Commissioner may carry his or her burden through the use of a VE when exclusive reliance on the guidelines is not appropriate. *Chaney-Everett v. Astrue*, 839 F. Supp. 2d 1291, 1299 (S.D. Fla. 2012) (citing *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989); *Walker*, 826 F.2d at 1003). A VE provides the ALJ with a realistic appraisal of the work that a claimant is capable of performing. *Id.* (citing *Walker*, 889 F.2d at 50).

9

## II.     ALJ'S APPLICATION OF THE SEQUENTIAL EVALUATION

After considering the evidence, the ALJ found that, although Plaintiff is unable to perform any past relevant work, he is able to perform other jobs that exist in significant numbers in the national economy. Tr. 20-21. Therefore, the ALJ concluded that Plaintiff was not disabled at any time between the Alleged Onset Date and the date of the ALJ's decision. Tr. 21.

Preliminarily, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2019. Tr. 17. Accordingly, as the ALJ noted, Plaintiff was required to "establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits." Tr. 15. *See also Moore*, 405 F.3d at 1211 ("For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured. 42 U.S.C. § 423(a)(1)(A) (2005). Because Moore's last insured date was December 31, 1997, her DIB appeal requires a showing of disability on or before that date."). Given that Plaintiff met the insured status requirements through, and following, the date of the hearing, the insured status requirement presented no obstacle.

Addressing the first step in the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the Alleged Onset Date. Tr. 17. Next, the ALJ found that Plaintiff had the severe impairment of loss of left side – lower visual field. Tr. 17. However, the ALJ then found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 17.

Next, the ALJ assessed Plaintiff's RFC. As part of this assessment, the ALJ considered all of the evidence, including Plaintiff's symptoms and the extent to which his symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence. He

also considered opinion evidence. Tr. 18-20.  With respect to Plaintiff's subjective complaints, the ALJ discounted them, finding that while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," Plaintiff's claims regarding the intensity, persistence and limiting effects of his symptoms were inconsistent with other record evidence.  Tr. 18-19.  In doing so, the ALJ discussed the testimony of the ME, an impartial medical expert who reviewed the entire medical record, the results of examinations of Plaintiff by Dr. Hamburger and other doctors, and opinion evidence from a state agency medical consultant who completed an assessment in June 2017 based on Plaintiff's November 2015 and November 2016 eye examinations.  Tr. 19-20.

The ALJ found the ME's conclusions and opinions to be "reasonable and convincing."  Tr. 19.  Ultimately, based on the ALJ's consideration of all of the evidence, he found that Plaintiff had the RFC "to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant is limited in driving. He has some difficulty reading. He cannot be exposed [to] heights and hazards."  Tr. 18.

After assessing Plaintiff's RFC, the ALJ considered whether Plaintiff had the ability to perform his past relevant work as a vice president of a financial institution.  Tr. 20.  The ALJ concluded, based in part on testimony from the VE, that Plaintiff was not able to perform his past relevant work.  Tr. 20.

Given that Plaintiff could not perform his past relevant work, the ALJ considered Plaintiff's age, education, work experience, and RFC, in conjunction with the Medical-Vocational Guidelines, to determine whether a significant number of jobs, that Plaintiff could perform, existed in the national economy.  Tr. 20-21.  The ALJ noted that Plaintiff was 53 years old on the Alleged Onset Date, which is defined as an individual closely approaching advanced age under 20 C.F.R.

11

§ 404.1563. Tr. 20. He also noted that Plaintiff had at least a high school education and that he is able to communicate in English. Tr. 20. The ALJ relied on testimony from the VE to determine whether jobs existed in the national economy for an individual with Plaintiff's age, education, work experience, and RFC. Tr. 21. As mentioned above, the VE identified the occupations of sandwich maker, hand packager, and laundry worker. Tr. 21, 47. The ALJ found that the VE's testimony was consistent with the Dictionary of Occupational Titles. Tr. 21. Based on the VE's testimony, the ALJ concluded that considering Plaintiff's "age, education, work experience, and [RFC], [Plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." Tr. 21. Therefore, the ALJ found that Plaintiff was not disabled. Tr. 21.

### III.     ANALYSIS OF ISSUES

Plaintiff argues that the ALJ erred for two reasons. First, he asserts that "[t]he ALJ failed to include limitations assessed by the [ME] in his RFC finding, without explaining their exclusion; thus, the step 5 decision is contrary to law and not supported by substantial evidence." DE 14-2 at p. 3. Though Plaintiff uses the buzz words "contrary to law" and "not supported by substantial evidence," it is clear that Plaintiff's first argument is far more limited – it is limited to whether the ALJ failed to address non-exertional limitations that he claims the ME testified existed.[4]

Specifically, Plaintiff argues that "the ALJ did not include the limitations regarding the slower pace at which Plaintiff must read (which results in slowed productivity) and to an environment without an obstacle laden floor." DE 14-2 at p. 6. Plaintiff contends that the ALJ

---

[4] While Defendant's Motion [DE 19] addresses the issues Plaintiff raised, it focuses more generally on why the ALJ's decision is supported by substantial evidence. As a large part of Defendant's Motion is essentially directed towards addressing issues that Plaintiff did not raise, Plaintiff notes in his Reply that the first issue he raises is far narrower than Defendant's framing of the issue [*see* DE 21 at p. 1].

was required to address these purported limitations, particularly because the ALJ found the ME's opinions to be "reasonable and convincing." In other words, Plaintiff argues that the ALJ's RFC finding is incorrect because it failed to include the aforementioned limitations. Relatedly, Plaintiff indicates that the ALJ's hypothetical questions were deficient, thereby causing a Step 5 error, because the ALJ's hypothetical questions to the VE did not account for the same alleged limitations. Notably, the ALJ's RFC finding is consistent with the limitations addressed in his hypothetical questions to the VE. Therefore, the resolution of Plaintiff's first argument turns on whether the alleged "limitations regarding the slower pace at which Plaintiff must read (which results in slowed productivity) and to an environment without an obstacle laden floor" are in fact limitations that the ALJ was required to include in the RFC and hypothetical questions, whether he failed to include them if required to do so, and whether such a failure (if any) is harmless or reversible error. As discussed below, the Court finds that the ALJ did not err. Even if he did, any such error was harmless.

Second, Plaintiff argues that "[t]he ALJ erred in his credibility analysis as a result of the [first] error and also because he failed to acknowledge or discuss Plaintiff's excellent work history as part of his analysis." DE 14-2 at p. 8. Though Plaintiff uses the term "credibility," he recognizes that the term is no longer used. *See* DE 14-2 at p. 8 n.3. Nevertheless, the use of the word "credibility" has no impact on the second issue raised by Plaintiff. Rather, the gist of Plaintiff's second argument is that the ALJ erred by failing to discuss, or even acknowledge, Plaintiff's strong work history.[5] Specifically, Plaintiff contends that the ALJ was *required* to consider his strong

---

[5] Plaintiff notes that his "certified earnings record demonstrates covered earnings for 143 quarters of coverage over 34 years, with 33 years of consecutive earning quarters since 1980." DE 14-2 at p. 8.

13

work history in evaluating Plaintiff's subjective symptoms.  Thus, this issue turns on whether the ALJ erred as a matter of law in not doing so.  As discussed below, he did not.

### A. Plaintiff's Limitations

As mentioned above, the ALJ found that Plaintiff had the RFC "to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant is limited in driving. He has some difficulty reading. He cannot be exposed [to] heights and hazards." Tr. 18.  The ALJ's hypothetical questions to the VE provided for substantially similar limitations (including "lowered ability to read"). Tr. 45.  Although Plaintiff notes the ALJ's finding regarding "some difficulty reading," he argues that Dr. Greenberg testified to "more specific and restrictive" limitations. DE 14-2 at p. 6.  Thus, at least with respect to the reading limitation, Plaintiff's gripe is not that the ALJ failed to include the limitation; it is that the ALJ did not articulate it with sufficient specificity.  Yet, Plaintiff fails to provide any authority to show that the ALJ was required to use greater specificity under the circumstances.

Moreover, the ALJ's decision provides greater detail regarding his finding that Plaintiff has some difficulty reading.  Regarding Plaintiff's ability to read, the ALJ stated, among other things, the following: "The claimant is able to read. The claimant had 20/25 vision. There is a blind spot when the claimant is scanning when reading. The claimant's central vision is clear in both eyes. The claimant has no problems with reading left to right." Tr. 19.  The foregoing is consistent with the ME's testimony and supported by substantial evidence.  If anything, the ALJ's description of "lowered ability to read" included in the ALJ's hypothetical question to the VE sounds more restrictive than the limitation described by the ME.  *See* Tr. 33-34 (reflecting ME's testimony that while Plaintiff's reading may be slowed down, he is able to read – "it doesn't negate the ability to read").  Accordingly, the ALJ did not err in describing Plaintiff's reading limitations.

14

Furthermore, even if the ALJ's description of Plaintiff's ability to read in the ALJ's hypothetical questions to the VE could qualify as an error, it would be harmless. That is because in addition to providing limitations to the VE to consider, the ALJ's hypothetical question specifically referred to a hypothetical individual "who has the limitations set forth by [the ME]." Tr. 45. *See Lea v. Comm'r of Soc. Sec.*, 776 F. Supp. 2d 1309, 1313 (M.D. Fla. 2011) ("Some circuits have held it to be sufficient if a vocational expert has independently learned of the limitations and presumably accounted for them." (citing *Simila v. Astrue*, 573 F.3d 503, 521 (7th Cir. 2009))). Notably, not only did the VE have the opportunity to listen to the ME's live testimony before herself testifying, but near the conclusion of the ME's testimony, the ALJ made sure to ask the VE whether she needed any clarification from the ME.

The ALJ did not err regarding the purported "obstacle laden floor" limitation either. The ME did not expressly opine that Plaintiff had such a limitation. Instead, in answering questions posed by Plaintiff's counsel about a symptom (of disorientation or disequilibrium) that Plaintiff claimed to have, the ME testified that someone with the symptom alleged by Plaintiff *could* have a problem if doing work involving an obstacle laden floor. *See* Tr. 36. However, the ME never testified that Plaintiff in fact had the symptom described by his counsel. Thus, the ALJ did not err by not addressing an obstacle laden floor limitation in the RFC or hypothetical questions. Moreover, even if he had erred, Plaintiff failed to show that any of the jobs identified by the VE involved an obstacle laden floor, and thus failed to show harmful error. Notably, after Defendant's burden of showing possible alternative employment was carried through the VE's testimony (with the VE being told to consider the ME's testimony), the burden returned to Plaintiff to prove an inability to perform the jobs identified by the VE. *See Washington*, 906 F.3d at 1359.

Related to the obstacle laden floor issue, Plaintiff also argues:

15

> [T]he VE was asked whether she would place a person in the named jobs if that person was at risk of tripping. Tr. 49. The VE responded by stating that if an individual has a consistent inability to be able to walk (in reference to tripping over objects on the ground), then "that would be a problem in a job in which the person has to move around." *Id.* The ALJ offered no demonstration that this specific testimony was considered in his analysis.

DE 14-2 at pp. 6-7. This argument also refers to a limitation or issue (tripping) that the ME did not testify Plaintiff had and that the ALJ did not find Plaintiff had. At a minimum, there is substantial evidence to support the ALJ's exclusion of "a consistent inability to walk" from Plaintiff's RFC. Also, simply because the ME discussed this issue (again, without opining that Plaintiff had such a limitation) does not mean that the ALJ was required to discuss such testimony in his decision. After all, the ALJ's decision shows that he considered Plaintiff's medical condition as a whole. *See Castel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 263 (11th Cir. 2009) ("We do not require the ALJ to 'specifically refer to every piece of evidence in his decision,' so long as the decision is sufficient to allow us to conclude that the ALJ considered the claimant's medical condition as a whole. (citing *Dyer*, 395 F.3d at 1211)).

Overall, the ALJ considered all of the evidence, his decision is supported by substantial evidence, and he applied the correct legal standards in determining Plaintiff's RFC and in posing hypothetical questions to the VE.

### B. Plaintiff's Work History

The ALJ did not err by failing to expressly discuss Plaintiff's work history in evaluating Plaintiff's subjective complaints. When a claimant attempts to prove that he is disabled by providing testimony regarding his pain or other subjective symptoms, he must show: (1) evidence of an underlying medical condition; and (2) either "objective medical evidence that confirms the severity of the alleged pain [or subjective symptoms] arising from that condition or . . . that the objectively determined medical condition is of such a severity that it can be reasonably expected

to give rise to the alleged pain" or subjective symptoms. *Dyer v. Barnhart*, 395 F.3d at 1210; *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). The foregoing standard applies to both complaints regarding subjective pain and complaints regarding other subjective conditions. *Holt*, 921 F.2d at 1223. If the standard is satisfied, an ALJ must consider a claimant's subjective complaints. *Foote*, 67 F.3d at 1560.

An ALJ is obligated to consider all of the evidence in evaluating a claimant's subjective complaints. *Brown v. Comm'r of Soc. Sec.*, 680 F. App'x 822, 825 (11th Cir. 2017) ("[T]he ALJ must evaluate the intensity and persistence of the symptoms . . . . In doing so, the ALJ considers all of the record, including the objective medical evidence, the claimant's history, and statements of the claimant and her doctors. . . . The ALJ then examines the claimant's statements regarding her symptoms in relation to all other evidence, and considers whether there are any inconsistencies or conflicts between those statements and the record." (citing 20 C.F.R. § 404.1529(c))). Nevertheless, an ALJ is not required to credit a claimant's subjective complaints provided that the ALJ "clearly 'articulate[s] explicit and adequate reasons' for discrediting the claimant's allegations of completely disabling symptoms." *Dyer*, 395 F.3d at 1210 (citing *Foote*, 67 F.3d at 1561-62).

Here, the record shows that the ALJ considered all of the evidence and that he articulated explicit and adequate reasons in discrediting Plaintiff's subjective complaints. As indicated above, Plaintiff does not dispute that with one exception – Plaintiff argues that the ALJ erred as a matter of law in not discussing his "excellent work history." Plaintiff does not otherwise contend the ALJ erred in evaluating his subjective complaints.

A recent case persuasively rejected the same argument Plaintiff makes here, recognizing as follows:

> Contrary to Plaintiff's argument, the Eleventh Circuit does not require that an ALJ summarize the entire record in his decision or "cite particular phrases or

> formulations" in assessing credibility. *Dyer,* 395 F.3d at 1210–11. In fact, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is not enough to enable [the district court . . .] to conclude that [the ALJ] considered her medical condition as a whole." *Id.* at 1211 (internal quotations omitted). Thus, if an ALJ provides a clearly articulated credibility finding supported by substantial evidence, the finding will not be disturbed on appeal. *Foote v. Chater,* 67 F.3d 1553, 1562 (11th Cir. 1995) (citation omitted).

*Neff v. Saul*, No. 8:18-CV-3040, 2020 WL 1181952, at *5 (M.D. Fla. Mar. 12, 2020). *See also Garner v. Berryhill*, No. 5:16-CV-0222, 2017 WL 4340451, at *7 (N.D. Ala. Sept. 29, 2017) ("[T]he Commissioner's rulings and regulations do not require the ALJ to explicitly discuss a claimant's work history in evaluating the claimant's credibility."). As Defendant notes, several other district courts have similarly rejected the notion that an ALJ is *required* to discuss a claimant's work history in evaluating the claimant's subjective complaints. *See* DE 19 at p. 19 n.6 (collecting cases). Notably, Plaintiff failed to further address the issue in his reply; instead, his reply only addressed the first issue discussed above (regarding Plaintiff's limitations). Because the ALJ's decision is supported by substantial evidence, and because he explained why he discounted Plaintiff's subjective complaints – noting inconsistencies with record evidence (Tr. 18-20) – the mere fact that the ALJ's decision does not explicitly discuss Plaintiff's prior work record, in conjunction with evaluating Plaintiff's subjective complaints, is not error.

## CONCLUSION

For the reasons discussed above, it is **ORDERED and ADJUDGED** that Plaintiff's Motion [DE 14] is **DENIED** and Defendant's Motion [DE 19] is **GRANTED**. The Court will enter a separate Final Judgment **affirming** Defendant's final decision.

**DONE AND ORDERED** in Fort Lauderdale, Florida on this 4th day of August 2020.

*/s/ Jared Strauss*
Jared M. Strauss
United States Magistrate Judge

18